# UNITED STATES DISTRICT COURT

for the

Eastern District of California

> **FILED**
>
> **Jun 06, 2020**
>
> CLERK, U.S. DISTRICT COURT
> EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | ) Case No.   2:20-mj-0089 EFB |
| | ) |
| KATHERINE HERRERA | ) |
| | ) |
| | ) |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, Greg Wenning, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 1, 2020 to June 1, 2020_____ in the county of _____San Joaquin_____ in the _____Eastern_____ District of _____California_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |

This criminal complaint is based on these facts:

(see attachment)

☒   Continued on the attached sheet.

/s/ Greg Wenning (by telephone authorization)
_Complainant's signature_

Greg Wenning, Special Agent FBI
_Printed name and title_

Sworn to me and telephonically.

Date: _____June 6, 2020_____

_Judge's signature_

City and state:   _____Sacramento, CA_____          Edmund F. Brennan, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT OF SPECIAL AGENT GREG WENNING

## IN SUPPORT OF COMPLAINT

I, Greg Wenning, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1.      I have been employed as a Special Agent ("SA") of FBI, since 2013, and am currently assigned to the Sacramento Division.  While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography.  I have gained experience through training at FBI Crimes Against Children training courses and through everyday work relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Specifically, during the course of my employment with the FBI I have received training regarding child pornography investigations and investigations regarding crimes committed using email, cloud services, mobile devices, peer-to-peer software and computers.  I have personally investigated individuals or groups of individuals who possessed, produced and traded images and videos of child pornography and I have testified in grand jury and federal trials regarding my investigations.  I have also been the affiant for over twenty federal search warrants, and have personally participated in the execution of multiple residential and device search warrants, including those where the warrant authorized the search and seizure of digital devices for the purpose of seizing evidence of the sexual exploitation of children, including images of child pornography.  I have personally interviewed collectors and producers of child pornography and have learned through those interviews and subsequent review of approximately 150 electronic devices, the methods employed by these individuals to obtain, store and conceal their collection of child pornography.

2.      Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. § 2251, and I am authorized by law to request a search warrant.

1        3.        This affidavit is made in support of a criminal complaint against Katherine HERRERA

2   for Aiding and Abetting the Production of Child Pornography.  The statements in this affidavit are based

3   in part on information provided by other law enforcement agents, as well as my own investigation of this

4   matter.  Where I describe statements made by other people (including other special agents and law

5   enforcement officers), the statements are described in sum, substance, and relevant part.  Similarly,

6   where I describe information contained in reports and other documents or records in this affidavit, this

7   information is also described in sum, substance, and relevant part.  Since this affidavit is being

8   submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact

9   known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to

10  establish probable cause to believe that HERRERA has violated 18 U.S.C. §§ 2251(a) and 2.

11

12                                      **STATUTORY AUTHORITY**

13

14        4.        This affidavit is submitted to establish that there is probable cause to believe that

15  HERRERA committed violations of 18 U.S.C. § 2251(a), relating to the production of child

16  pornography. 18 U.S.C. § 2251(a) prohibits an individual from employing, using, persuading, inducing,

17  enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing

18  any visual depiction of such conduct.

19                                            **DEFINITIONS**

20

21        5.        The following definitions apply to this Affidavit:

22              a.  "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual

23        depiction of sexually explicit conduct where (a) the production of the visual depiction involved

24        the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital

25        image, computer image, or computer-generated image that is, or is indistinguishable from, that of

26        a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created,

27        adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

28              b.  "Visual depictions" include undeveloped film and videotape, and data stored on

                                                  2

1    computer disk or by electronic means, which is capable of conversion into a visual image.  *See*

2        18 U.S.C. § 2256(5).

3            d.  "Minor" means any person under the age of eighteen years.  *See* 18 U.S.C. § 2256(1).

4            e.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse,

5    including genital-genital, oral-genital, or oral-anal, whether between persons of the same or

6    opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious

7    exhibition of the genitals or pubic area of any person.  *See* 18 U.S.C. § 2256(2).

8            f.  "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high

9    speed data processing device performing logical or storage functions, and includes any data

10    storage facility or communications facility directly related to or operating in conjunction with

11    such device."  *See* 18 U.S.C. § 1030(e)(1).

12                   **BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE**

13        6.      Following an investigation into the posting of sexually explicit images of a minor victim

14    under the age of ten on a darknet website, Jonathan THORNTON was arrested and charged with

15    producing and distributing the images.  For the reasons set out below, there is probable cause to believe

16    that Katherine HERRERA aided and abetted the production of the images of the minor victim.

17    **TARGET USER's Activity on TARGET WEBSITE**

18        7.      On or about May 12, 2020, an FBI Online Undercover Employee (hereinafter "OCE")

19    received information that a person with a specific username (hereinafter "TARGET USER") was

20    posting nude and non-nude photos of minor children on TARGET WEBSITE.  TARGET WEBSITE is a

21    site on the DarkWeb, which is a network that masks an internet user's identity.  For this reason, sites on

22    the DarkWeb are often used for illicit activity, including the distribution of child pornography.

23        8.      A review of the posts made by TARGET USER indicated that TARGET USER had

24    posted many modeling non-nude images of underage girls, as well as nude and non-nude images of a

25    minor child (hereinafter "VICTIM 1").  TARGET USER referred to VICTIM 1 as "Pixie."

26        9.      TARGET USER had also created a thread titled "Ideas for Pixie" wherein other users of

27    TARGET WEBSITE suggested other ideas for future photography sessions with VICTIM 1.  Around

28    May 26, 2020, FBI OCE noted a link posted on the TARGET USER's profile on TARGET WEBSITE.

                                              3

1   This link led to a website that displayed an image of VICTIM 1 under the name "Pixie," along with the

2   following description: "Pixie is a nude model. She is [under ten] years old and available for custom

3   sets."

4       10.     Your affiant reviewed the images of VICTIM 1 posted by TARGET USER and

5   determined that at least 50 of the images of VICTIM 1 depict sexually explicit conduct, specifically

6   lascivious display of the genitals. The photos of VICTIM 1 were posted in 10 collages, with each

7   collage containing between 27 and 189 photos. Each collage starts with VICTIM 1 nude or partially

8   clothed and progresses to her being fully nude.  The outfits in which VICTIM 1 is pictured include a red

9   mesh tube-style dress with no underwear, through which VICTIM 1's skin is visible; a sheer white dress

10  with no underwear; and a sheer pink outfit with a bikini-style bottom and a lingerie-style top.  In dozens

11  of the nude images, her legs are spread and her vagina is visible.  In some of these images, VICTIM 1 is

12  lying on her back, wearing a dress or robe with no underwear.  The dress is pulled up above her hips and

13  her legs are spread to expose her pubic area.  These photographs appear to be taken from below her feet,

14  so that her pubic area is the focus of the image.

15      11.     On May 26, 2020, FBI OCE advised your affiant that additional photos of VICTIM 1

16  were posted to TARGET WEBSITE which are similar in nature to the above photos.

17      12.     Around June 1, 2020, FBI OCE conducted a review of the TARGET USER's postings on

18  TARGET WEBSITE and discovered that new images of VICTIM 1 had been posted, which included an

19  image of stills from a video. This image had the title "Pixie Rub Down.mp4" and showed VICTIM 1

20  nude with an adult nude female seemingly rubbing the child.  There was also an image of VICTIM 1

21  naked with a cherry in her vagina.

22  **Identification of TARGET USER**

23      13.     After reviewing public records and comparing publicly available images with the images

24  posted by TARGET USER on the TARGET WEBSITE, FBI agents identified Jonathan THORNTON as

25  the TARGET USER who posted images of VICTIM 1.  THORNTON owns and operates a photography

26  business called Thornton Photography Studio in Stockton, California.

27  **Search Warrant for THORNTON's Residence**

28

4

1   14.     Based on DMV vehicle registration records and surveillance, THORNTON's current

2   address was determined to be 8310 Dauphin Dr., Stockton, CA on December 8, 2019.

3   15.     On June 1, 2020, your affiant obtained a search warrant for 8310 Dauphin Dr.  The

4   warrant was executed on June 2, 2020.

5   **Evidence Developed During Execution of the Search Warrant**

6   16.     Your affiant spoke with THORNTON's wife for approximately an hour.  THORNTON's

7   wife identified VICTIM 1 from a non-nude photo that had been posted to the TARGET WEBSITE by

8   THORNTON.

9   17.     THORNTON's wife stated that HERRERA and THORNTON are longtime friends.

10   THORNTON's wife showed your affiant her phone and your affiant observed that it contains

11   HERRERA's contact information.

12   18.     THORNTON's wife provided the address of the location where she believed the

13   photographs of VICTIM 1 were taken.  She stated that THORNTON had told her that HERRERA was

14   present when he took the photographs of VICTIM 1.  She provided a clothed photograph and physical

15   description of HERRERA.  The face of the adult woman in the "Pixie Rub Down.mp4" images is not

16   visible; however, HERRERA's body type generally matches the body type of the adult woman pictured

17   in the photographs with VICTIM 1.

18   19.     Your affiant also interviewed THORNTON.  THORNTON admitted to taking

19   photographs from at least five series of VICTIM 1 that were posted to TARGET WEBSITE.

20   THORNTON identified VICTIM 1 by name and provided the name of TARGET WEBSITE.

21   20.     THORNTON stated that the adult woman in the photographs with VICTIM 1 is

22   HERRERA.  He stated that the woman's face is not pictured in the images because HERRERA asked

23   him not to photograph her face.  He further stated that he sent images he took of VICTIM 1 to

24   HERRERA using his cell phone.  He further stated that he received payment for the images of VICTIM

25   1 from other users of the TARGET WEBSITE, and that he transferred some of the money to

26   HERRERA.

27   21.     At approximately 10:23 am on June 2, an FBI agent spoke with an individual (hereinafter

28   "NEIGHBOR 1") who lives next door to the address provided by THORNTON's wife as the location

5

1   where some of the photographs of VICTIM 1 were taken.  NEIGHBOR 1 stated that she knows

2   HERRERA well and identified HERRERA by name from her DMV photo.

3        22.      NEIGHBOR 1 stated that the last time she saw HERRERA was Memorial Day weekend.

4   She stated that she saw HERRERA pull up in a car and go inside the house next door with a female

5   child.  NEIGHBOR 1 stated that she saw an adult man pull up across the street and carry video or

6   photography equipment into the house next door.  NEIGHBOR 1 stated that they remained in the house

7   for over three hours.  The agent showed NEIGHBOR 1 a photograph of THORNTON, and she stated

8   that he appeared to be the man she saw carrying video or photography equipment into the house.

9        23.      At approximately 5:00 pm on June 2, 2020, FBI agents observed HERRERA arrive by

10  car at the address provided by THORNTON's wife.  HERRERA parked outside the residence, got out of

11  her vehicle, walked around without entering the residence, got back in her vehicle, and departed.

12  Several minutes later, HERRERA returned to the residence and entered the residence through the front

13  door.

14       24.      When HERRERA came back out of the residence, agents approached her and asked why

15  she was at the residence.  HERRERA stated that THORNTON's wife had contacted her to inform her

16  that THORNTON had been arrested, which prompted her to go to the house.

17       25.      Herrera was interviewed at the scene and stated that she and THORNTON had planned to

18  have THORNTON take photographs of VICTIM 1.  She stated that she was present at all of the photo

19  shoots with THORNTON and VICTIM 1.  She stated that she and THORNTON had planned to have an

20  additional photo shoot the following weekend with VICTIM 1 and a male child.

21       26.      HERRERA stated that VICTIM 1 modeled swimsuits, overalls, and pajamas.  She was

22  not specifically asked about the nude photographs of VICTIM 1 or the photographs in which VICTIM 1

23  appears with a nude adult female.

24       27.      FBI agents seized HERRERA's phone from her person pursuant to a search warrant.  A

25  review of the phone revealed numerous text messages between HERRERA and THORNTON.  Text

26  messages from HERRERA are attributed to her because they are displayed as "sent" messages on her

27  phone and were sent from the same phone number that HERRERA provided to an FBI agent as her cell

28  phone number. Text messages from THORNTON are attributed to him because they were sent from a

1  number associated with "Jon Thornton" in public records checks and because the assigned contact name

2  in HERRERA's phone is "John."

3       28.     Many of the text messages between HERRERA and THORNTON concern the photo

4  shoots with VICTIM 1.  In the text messages, HERRERA tells THORNTON which location they will

5  use for specific photo shoots, texts him the address, and tells him what time to arrive.  HERRERA and

6  THORNTON also discuss receiving payment for the photographs of VICTIM 1 from "clients," and

7  HERRERA asks THORNTON to send her her share of the money. Additionally, HERRERA and

8  THORNTON discuss the sexual nature of the photo shoots in multiple exchanges.

9       29.     On May 23, 2020, THORNTON discusses what types of photographs they can take of

10  VICTIM 1 and also references receiving payment for the images: "dancing, stickers, fishnet stockings,

11  baby oil, putting on makeup….these we can do now. We can also recycle a few of the outfits for the new

12  clients I picked up. Hopefully we can catch 2 or 3 and get a submission fee at least. That's usually

13  around $50 but varies from client to client."  HERRERA responds, "Ok when."

14       30.     Later that evening, THORNTON texts HERRERA: "The red dress, dancing video, the

15  tights and skirt, and overalls went over big." He suggests adding bananas and cherries as props for their

16  next photo shoot with VICTIM 1 and HERRERA says "Ok."

17       31.     On May 24, 2020, THORNTON and HERRERA discuss a costume as an option for

18  VICTIM 1 to wear during a photo shoot.  THORNTON says of the costume: "Supposed to be a

19  Brazilian but looks more like a thong."  HERRERA responds, "Lol."

20       32.     On May 25, 2020, THORNTON texts HERRERA: "You think she can be seductive

21  eating a banana lmao." HERRERA responds, "Prob not unless chubby cheeks with a mouth full is

22  seductive lol."  HERRERA then asks "Do I need to bring anything clothes wise?"  THORNTON tells

23  her to bring "Regular panties."  HERRERA replies, "Solid you mean. Or does print [matter]."

24  THORNTON responds, "Regular girl panties lol. Solid color if you have them. The ones I have are too

25  lose [*sic*] on her."  HERRERA says, "Ok."

26       33.     On May 26, 2020, THORNTON texts HERRERA, "Wohoo got $275 for the tape.

27  Technically its $45 for the overalls $200 for the tape and $30 for the few red dress shots I got."[1]

28

_____

[1] Images found on THORNTON's phone and on the TARGET WEBSITE depict VICTIM 1 in

1    HERRERA responds, "So 137 each?"  THORNTON replies that he will give HERRERA $200 and keep

2    $75 for himself.  HERRERA asks for the money "now" and THORNTON says "Lol have to wait for the

3    funds to come in. As soon as it comes in I'll send you yours."

4         34.    On June 2, 2020, VICTIM 1 was interviewed by a child forensic interviewer.  VICTIM 1

5    was shown many of the images taken of her by THORNTON and identified herself in all of them.

6    VICTIM 1 stated that THORNTON took the photographs, and that HERRERA was present during the

7    photo shoots.  VICTIM 1 was shown an image of herself with the nude adult woman and identified the

8    adult woman as HERRERA.

9    **CONCLUSION**

10

11        35.    Based on the aforementioned factual information, there is probable cause to believe that

12   between on or about April 1, 2020 and on or about June 1, 2020 in the Eastern District of California,

13   KATHERINE HERRERA aided and abetted the production of child pornography, in violation of 18

14   U.S.C. §§ 2251(a) and 2.

15       I declare under penalty of perjury that the foregoing information is true and correct, to the best of

16   my knowledge, information and belief.

17   **REQUEST FOR SEALING**

18        36.    I request that the Court seal the arrest warrant and the affidavit and applications in

19   support thereof, except that copies of the warrants in full or redacted form may be maintained by the

20   United States Attorney's Office and may be served on Special Agents and other investigative and law

21   enforcement officers of FBI and federally deputized state and local law enforcement officers, and other

22   government and contract personnel acting under the supervision of such investigative or law

23   enforcement officers, as necessary to effectuate the warrant.  These documents pertain to and discuss an

24   ///

25   ///

26   ///

27   ────────────────────

28   overalls, in a red mesh tube-style dress with no undergarments underneath, and with black tape stuck on
     her body, among other outfits.

8

1  ongoing criminal investigation that is not known to all the targets of the investigation.  Disclosure at this

2  time may result in flight or the destruction of evidence, and may put officers executing the warrant in

3  danger.

4

5                                                    /s/ Greg Wenning (by telephone authorization)
                                                     Greg Wenning
6                                                    Special Agent
                                                     Federal Bureau of Investigation
7

8

9          Sworn and subscribed before me this  6  th day of June , 20 20  .

10

11         The Honorable Edmund F. Brennan
           UNITED STATES MAGISTRATE JUDGE
12

13

14

15          /s/ Mira Chernick
            Approved as to form by AUSA MIRA CHERNICK

16

17

18

19

20

21

22

23

24

25

26

27

28